UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANDREW WILLIAM BANNISTER, deceased, by his Co-Administrators *Ad Litem* CANDACE C. BANNISTER and MARK E. BANNISTER, | Case No. 3:18-cv-188 <br><br> Judge Travis R. McDonough <br><br> Magistrate Judge Debra C. Poplin |
| *Plaintiffs*, | |
| v. | |
| KNOX COUNTY BOARD OF EDUCATION, KNOX COUNTY SCHOOLS, KNOX COUNTY, TENNESSEE, RYAN J. SIEBE, KIMBERLY H. GRAY, ANTHONY B. NORRIS, ERIN A. ASHE, and BRIAN A. HARTSELL | |
| *Defendants*. | |

# MEMORANDUM OPINION

Before the Court is a motion to dismiss filed by Defendants Knox County, Tennessee, and Knox County Board of Education (Doc. 42). For the reasons set forth below, the motion will be **GRANTED**.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiffs are the parents, administrators *ad litem*, and next friends of Andrew William Bannister ("Will") and seek recovery for Will's death on April 18, 2017. (Doc. 36-1, at 118–19.)

---

[1] The following summary of facts is based on the allegations of Plaintiffs' second amended complaint, which, if well pleaded, are taken as true for the purposes of deciding the motion to dismiss. *See Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).

During the 2016 to 2017 school year, Will was a sophomore at Farragut High School in Knox County, Tennessee. (*Id.* at 119.) The complaint details a lengthy history of school administrators and teachers allegedly subjecting Will to unmerited, disproportionate, and unfair punishment. (*See, e.g.*, *id.* at 123–24 (receiving one-day in-school suspension for possessing a bottle of baby powder); *id.* at 124–25 (receiving two-day out-of-school suspension for taking a pizza box during theater class which other students invited him to take because "they had plenty"); *id.* at 128 (having his locker searched and his father called based on an "anonymous tip"); *id.* at 128–29 (sent to principal's office and mother called for falling asleep during class); *id.* at 129–30 (subject to disciplinary hearing and 100-day suspension for possessing dietary-supplement pills he purchased from another student, although other student was not disciplined).) Throughout this period, Will experienced serious mental anguish and anxiety surrounding his school performance and discipline. (*See id.* at 123–146.)

Plaintiffs allege that the school administration's targeting of Will was caused by his "perceived gender and sexual orientation" and "support of LGBT rights." (*Id.* at 127.) When Will was thirteen and fourteen years old, he "develop[ed] distinctive styles for his red hair and dress[ed] in a unique manner" that "caused him to stand out to the school administration." (*Id.* at 120.) During his freshman year of high school, Will continued to be interested in style and fashion, and he began creating his own clothes by reworking second-hand clothing. (*Id.* at 121.) During the fall of 2016, Will once wore base-layer pants—similar to leggings—to school in opposition to a proposed ban on female students wearing leggings to school. (*Id.* at 127.) Will was also close friends with students who publicly identified as gay, and Will openly supported the right of transgender students to use the bathrooms associated with the gender of their identification rather than the gender assigned to them at birth. (*Id.* at 126–27.) Based on his

style, appearance, and acceptance of all genders and sexual orientations, Will was perceived part of the LGBTQ+ community himself. (*Id.* at 126–27.)

On March 20, 2017, Will returned to school after a lengthy period of absence due to his suspension for possessing dietary-supplement pills at school. (*Id.* at 145.) Despite being promised a "clean slate" upon his return, the principal, Defendant Ryan J. Siebe, visited two of Will's four classes on his first day back. (*Id.* at 146.) This caused Will additional mental anguish and drove his parents to schedule an appointment with Will's pediatrician to reevaluate his anti-anxiety medication needs. (*Id.*)

On April 16, 2017, Will began reworking a creative-writing assignment from his English and language arts teacher, Defendant Erin A. Ashe, which had been originally graded on April 6, 2017, and asked students to evaluate whether their lives were "comedies" or "tragedies." (*Id.* at 147, 149.) Will's assignment was marked down for not complying with the formatting guidelines announced at the beginning of the semester while Will had been suspended from school. (*Id.* at 147.) That night, Will expressed frustration at being penalized for his failure to comply with formatting guidelines and asked his parents whether they could sue the school system based on their unfair treatment of him. (*Id.*)

Will reworked the assignment to comply with the formatting guidelines and turned in the reworked assignment on April 17, 2017. (*Id.* at 147–48.) That evening, his mother asked him about the assignment, and Will retrieved the original copy from the garbage can at their house. (*Id.* at 148.) That version stated:

> Is your [sic] comedy or tragedy
>
> Probably a tragedy because I have many flaws that will eventually be the end of me. The tragedy that might by the end of me, like selfishness or other things like that. Ridin['] round bein['] selfish and not thinking of others. I'm scared for myself that I might do something actually harmful for others. Shout out to my

3

> boy Lil Tracy, he up next. Lil Raven also gon['] make it. GBC gonna take over
> or at least half of. I really messed up. There's no way I'm gonna finish.

(*Id.* at 168–69.) The original assignment was marked as graded on April 6, 2017. (*Id.* at 149.) No one from the school contacted Will's parents after reading the assignment. (*Id.*)

On the night of April 17, 2017, Will's father returned from work and proceeded to the basement to put away his briefcase. (*Id.* at 148.) He spoke with Will in the basement about the creative-writing assignment. (*Id.*) Then, he went upstairs to use the bathroom and to call the Knox County Circuit Court to inquire about jury duty the next day. (*Id.*) He then returned to the basement to find Will unconscious and bleeding on the floor from a self-inflicted gunshot wound. (*Id.*) Will was declared medically dead at 12:29 a.m. on April 18, 2017. (*Id.*)

### B. Procedural History

This case was filed on April 16, 2018, in the Circuit Court for Knox County, Tennessee, against Knox County, Tennessee ("the County"), Knox County Board of Education ("KCBE"), Knox County Schools ("KCS")[2], and several individual defendants. (*See* Doc. 1, at 1; Doc. 1-1, at 1.) The original complaint asserted multiple claims for "denial of administrative due process" in various education- and discipline-related decisions concerning Will Bannister, as well as claims for "denial of fairness and impartiality," "intimidation, harassment, and bullying," and "suicide prevention." (Doc. 1-1, at 33–50.) On May 1, 2018, Plaintiffs amended the complaint to add allegations of liability under the Tennessee Governmental Liability Act. (*Id.* at 85–89.) On May 9, 2018, Plaintiffs filed a notice of voluntary nonsuit as to all individual-capacity claims against the individual defendants, and the Circuit Court dismissed all such claims with prejudice. (*Id.* at 91–94.)

---

[2] The County and KCBE represent that KCS "is not an independent entity subject to suit," and therefore they did not include KCS in their motion to dismiss. However, they state, "[t]o the extent [KCS] is considered by this court to be a proper defendant," KCS joins the motion as well.

4

On May 14, 2018, the County, KCS, and KCBE (collectively "the County Defendants") removed the action to this Court under 28 U.S.C. §§ 1331 and 1441(b). (Doc. 1, at 1–2.) The County Defendants acknowledged that the complaint did not name any federal cause of action but argued that, because Plaintiffs sought damages for "violations of Will's constitutional rights," they were likely asserting claims under 42 U.S.C. § 1983. (Doc. 2, at 4.)

Thereafter, Plaintiffs filed a motion to remand to state court, representing that "this matter concerns issues of state law and state law only."[3] (Doc. 18, at 1.) Plaintiffs argued that the references to constitutional rights in the complaint were in reference to the Tennessee Constitution, not the United States Constitution. (Doc. 19, at 3.) Plaintiffs stated that the complaint "does not, at any point, seek to enforce a single federal right against the Defendant[s]." (*Id.*) On October 25, 2018, the Court granted Plaintiffs' motion to remand, finding the complaint did not present a federal question on its face. (Doc. 35, at 2.)

This case remained in the Knox County Circuit Court, and no discovery or other case-related activity occurred for two years due to the illness of Plaintiffs' counsel. (*See* Doc. 38, at 2; Doc. 44-1, at 4.) On November 2, 2020, Plaintiffs changed representation and moved to amend their complaint to add federal claims. (Doc. 36-1, at 2; *see also id.* at 99–100 (proposed second amended complaint adding claims under 42 U.S.C. § 1983 and Title IX of the Educational Amendments of 1972.) The County Defendants opposed the motion to amend, arguing that Plaintiffs should be estopped from asserting the federal claims "as they repeatedly disavowed such claims when this case was removed to [this Court], and used as the basis for their successful argument for remand that they were not making any claims under federal law." (*Id.* at 15.)

---

[3] Plaintiffs' motion to remand was handled by their current counsel.

5

On March 2, 2021, the Circuit Court granted Plaintiffs' motion to amend their complaint (*id.* at 104), and Plaintiffs filed the second amended complaint on March 23, 2021 (Doc. 36, at 3.) On March 25, 2021, the County Defendants filed a notice of removal and motion to reopen in this Court, again asserting that the Court had subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b). (*Id.* at 1–4.) The Court granted the motion to reopen this civil case (Doc. 41), and the County Defendants subsequently filed a motion to dismiss all of Plaintiffs' claims (Doc. 42). The motion to dismiss is now ripe for adjudication.

## II.  STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859.  This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. State-Law Claims

The County Defendants move to dismiss Plaintiffs' state-law tort claims based on the civil-rights exception of the Tennessee Governmental Tort Liability Act ("TGTLA") and the applicable statute of limitations.  (Doc. 42, at 1.)  Plaintiffs have agreed to dismiss all state-law claims brought under the TGTLA pursuant to the civil-rights exception.  (Doc. 46-1, at 1–2.)  Accordingly, the Court will **GRANT** the County Defendants' motion to dismiss (Doc. 42) to the extent it seeks dismissal of the state-law tort claims.

#### B. Federal Claims

##### 1. *Official-Capacity Claims*

The County Defendants move to dismiss the claims against the individual Defendants in their official capacities as redundant.  (Doc. 42, at 13–14.)  Suits brought against local officers in their official capacities are treated, "in all respects other than name," as suits against the government entity "[a]s long as the government entity receives notice and an opportunity to

respond." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"). Here, the County clearly had notice and an opportunity to respond, as it is a Defendant in this case. Thus, the official-capacity claims are coextensive with the claims against the County and are redundant. Plaintiffs concede as much and agree to the dismissal of the official-capacity claims. Accordingly, the motion to dismiss will also be **GRANTED** to the extent the County Defendants seek dismissal of these claims.[4]

### 2. *Judicial Estoppel*

The County Defendants argue that Plaintiffs should be estopped from asserting any federal claims based on their disavowal of any such claims in the original complaint in their motion to remand. (Doc. 42, at 7–11.)

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (citations omitted). The doctrine prevents a party from:

> (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.

*Id.* (citations and internal quotation marks omitted). Judicial estoppel only bars positions that are "clearly inconsistent" with a party's earlier position. *Id.* (citations omitted).

---

[4] These claims are also subject to dismissal on the merits for the same reasons as the claims against the County Defendants; namely, the claims are untimely. *See infra* Section III.B.3.

8

The doctrine of judicial estoppel is inapplicable here. First, Plaintiffs' representations occurred in this case, not a prior proceeding, and the Court that adopted the allegedly contrary argument is the same Court ruling on this motion. Second, Plaintiffs' positions are not inconsistent with one another. In their motion to remand in 2018, Plaintiffs took the position that their *first* amended complaint—which this Court found contained no clear citation to any federal statute or law—did not assert a federal claim. (*See* Docs. 18, 19, 35.) Now, Plaintiffs contend that their *second* amended complaint—which does include claims based on federal statutes—asserts federal claims. (*See* Doc. 44-1, at 5; Doc. 36-1, at 99–100.) Accordingly, the Court will not dismiss Plaintiffs' federal claims based on the doctrine of judicial estoppel.

### 3. *Statute of Limitations*

The County Defendants next argue that Plaintiffs' federal claims are barred by the applicable statutes of limitations. (Doc. 42, at 11–12.) Plaintiffs first respond that Defendants waived this argument by failing to raise it in their answer to the original complaint. (Doc. 44-1, at 6–7.) However, Defendants have not yet filed an answer to Plaintiffs' second amended complaint, and Plaintiffs were clear that their first amended complaint did not include any federal claims. Accordingly, Defendants did not waive this defense with respect to Plaintiffs' federal claims by failing to raise it in their answer to the first amended complaint. Defendants are entitled to raise the statute-of-limitations defense to the newly asserted federal claims and have done so at the proper time through an appropriate vehicle—their motion to dismiss. Thus, the Court will consider the parties' other arguments with respect to the applicable statutes of limitations.

a. Section 1983 Claim

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . .to the deprivation of any rights ... secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The statute of limitations applicable to a § 1983 claim derives from the forum state's statute of limitations for personal-injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted). In Tennessee, the statute of limitations for personal-injury claims is one year. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A); *see also Eidson v. Tenn. Dep't Childs. Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (borrowing Tennessee's one-year limitations period in a § 1983 case).

The section of the second amended complaint setting forth Plaintiffs' § 1983 claim is not altogether clear which constitutional violations Plaintiffs allegedly suffered. Nevertheless, review of the entire complaint suggests that Plaintiffs' § 1983 claim is rooted in violations of Will's constitutional right to procedural due process. (Doc. 36-1, at 150–56.) According to the second amended complaint, the alleged due-process violations occurred between December 8, 2016,[5] and March 20, 2017, when Plaintiffs allege that Will did not receive due process prior to his suspension for possession of dietary-supplement pills. (*Id.* at 129–42, 150–56.)

Plaintiffs did not file this action until April 16, 2018 (*see* Doc. 1-1, at 1), and, therefore, Plaintiffs' § 1983 claims based on a denial of due process are time-barred under the one-year statute of limitations. Plaintiffs argue, however, that the "continuous-violation" doctrine applies to extend the statute of limitations for their § 1983 claims. (Doc. 44-1, at 7–10.) Specifically,

---

[5] The second amended complaint mistakenly states that Will was taken to the principal's office for this incident on December 8, 2017, but it is clear from the rest of the complaint that this date is meant to be December 8, 2016. (*See* Doc. 36-1, at 129.)

10

Plaintiffs contend that the violation continued after Will's return to school, when the principal, Defendant Siebe, continued monitoring him during his classes.[6] (*Id.* at 10.)

While the length of the statute of limitations derives from state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). Under federal law, a cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (citations and internal quotation marks omitted). However, a case presents a continuing violation and extends the accrual period when: (1) "the defendants engage in continuing wrongful conduct"; (2) "injury to the plaintiffs accrues continually"; and (3) "had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)). The continuing-violation doctrine "does not apply to a series of discrete acts, each of which is independently actionable, but rather to a cumulative violation caused by a continuing course of misconduct." *Guba v. Huron Cnty.*, 600 F. App'x 374, 380 (6th Cir. 2015). Further, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (1999) (citations omitted); *see also Eidson*, 510 F.3d at 635 ("Passive inaction does not support a continuing violation theory.").

---

[6] Plaintiffs also argue that they did not discover that Defendants had notice of Will's mental state but failed to report it until they found his original creative-writing assignment on April 30, 2017. However, Plaintiffs do not allege anywhere in the second amended complaint that this failure to notify them of the ideations reflected in Will's assignment violated a constitutionally protected right. (*See* Doc. 36-1, at 168–70.) In connection with their claim of "suicide prevention," Plaintiffs cite only violations of Tennessee statutes and KCBE policies. (*See id.*) Accordingly, these actions do not delay accrual of Plaintiffs' § 1983 claim under the continuing-violation doctrine.

"In evaluating whether [a] plaintiff has alleged facts sufficient to make out a continuing violation, it is necessary to first consider the contours of the civil rights claims he has asserted." *Eidson*, 510 F.3d at 635. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (emphasis in original). In *Goss v. Lopez*, the Supreme Court recognized that students have a property interest in educational benefits and a liberty interest in reputation, which is also implicated by suspension and held that "[a] 10-day suspension from school is not de minimis" and "may not be imposed in complete disregard of the Due Process Clause." 4190 U.S. 565, 576 (1975). However, no precedent suggests that due process upon suspension includes a right not to be monitored by administrators after returning to school.

The alleged constitutional injury in this case was, thus, cognizable upon Will's suspension from school and continued for the length of time he was suspended without constitutionally adequate process. Plaintiffs have not pled that constitutional violations continued to occur after Will's return from suspension, despite alleging a significant mental and emotional impact caused by the suspension. Such impact was merely a continuing effect of the constitutional violation and not a continuing violation of Will's due-process rights. Further, "placing a target on [Will] for a continued deprivation of his civil rights . . . by Defendant Siebe routinely visiting [him] in classes" (Doc. 44-1, at 10) does not amount to a continuing violation, as Plaintiffs have not alleged that Siebe's appearance in classes itself violated any constitutional right. Accordingly, with respect to Plaintiffs' § 1983 claims, the continuing-violation doctrine does not apply to extend the accrual of that claim. *See Tolbert*, 172 F.3d at 940. The Court will, therefore, **GRANT** the County Defendants' motion to dismiss the § 1983 claim as time barred.

### b. Title IX Claim

The section of Plaintiffs' second amended complaint which asserts a Title IX claim provides in its entirety:

> The Plaintiffs allege that the aforementioned acts and/or omissions alleged in the preceding paragraphs are in derogation of and violative of Title IX of the Educational Amendments of 1972, or 20 U.S.C. § 1680 et seq.[,] for which [the County Defendants] are liable to Plaintiffs. At all times material, Plaintiffs allege that the requisite standard of liability was met concerning the conduct of the person aforementioned in the previous pleadings and accordingly establishes liability against [the County Defendants].

(Doc. 36-1, at 170–71.) From this description, it is all but impossible to discern which type of claim under Title IX Plaintiffs attempt to assert and which allegations support such a claim. From their response to the motion to dismiss—which contains no citation to the actual statute or the elements of a Title IX claim—it appears that Plaintiffs are asserting a claim of harassment based on Will's gender-non-conforming behavior. (*See* Doc. 44-1, at 11.) Plaintiffs seem to suggest that Will was harassed or "bullied" by the school administration based on his support of the LGBTQ+ community, his "distinct style of fashion," and his decision to wear base-layer pants to school to protest against the school's rule against female students wearing leggings to class. (*Id.* at 11–12.) In their response, Plaintiffs assert that "[b]ecause Mr. Bannister's actions did not align with traditional gender roles[,] Defendant Siebe capitalized on the first opportunity that he could in order to punish Mr. Bannister for not conforming with traditional gender roles." (*Id.* at 12.)

Section 901(a) of Title IX states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]

20 U.S.C. § 1681(a). A recipient of federal funds "intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of

13

teacher-student discrimination." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The Sixth Circuit has recognized that Title IX claims, like Title VII claims, can be rooted in discrimination based on the failure to conform to gender stereotypes. *See Tumminello v. Father Ryan High Sch.*, 678 F. App'x 281, 284–85 (6th Cir. 2017). To state such a claim, Plaintiffs "must allege facts showing that [Will] did not conform to gender stereotypes in an observable way and that these characteristics were the basis for his harassment." *Id.* at 285–86.

However, Title IX claims, like § 1983 claims, are subject to the forum state's statute of limitations for personal-injury claims. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996). As with the § 1983 claims, Plaintiffs have not alleged that any harassment or discrimination based on sex—or even any interactions between Will and the school administration—occurred within one year of the date they filed the case. Although Plaintiffs argue that the tragic incidents of April 17–18, 2017, were a result of harassment by school employees, they have not alleged that any harassment or discrimination in violation of Title IX occurred within the limitations period.[7]

Consequently, the Court must also **GRANT** the County Defendants' motion to dismiss the Title IX claim as time barred.

---

[7] Although Plaintiffs do not argue for the application of the continuing-violations doctrine with respect to their Title IX claim, the Court notes that there is split authority as to whether the continuing-violations doctrine applies in Title IX cases. *See Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 734–35 (M.D. Tenn. 2018) (collecting cases). However, even if the doctrine were applicable to this claim, it would not apply for the same reasons it does not apply to the § 1983 claim—though Plaintiffs have alleged that the effects of the discrimination occurred within the limitations period, the allegations of the actual proscribed behavior are outside of the limitations period.

II. **CONCLUSION**

For these reasons, the County Defendants' motion to dismiss (Doc. 42) is **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**